571 A.2d 878

**Katherine GARRISON**

v.

**SHOPPERS FOOD WAREHOUSE.**

**No. 1154, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

April 2, 1990.

Howard L. Metz (Ashcraft & Gerel, on the brief), Rockville, for appellant.

A. Raymond Bevans, Jr., Asst. Atty. Gen. of Towson (J. Joseph Curran, Atty. Gen., Baltimore, and Thomas J. Michels, Asst. Atty. Gen., Towson, on the brief), for appellee.

Argued before MOYLAN, ROBERT M. BELL, JJ., and JAMES S. GETTY, Associate Judge of the Court of Appeals (retired) Specially Assigned.

ROBERT M. BELL, Judge.

Katherine Garrison appeals from the judgment of the Circuit Court for Montgomery County entered on motion by appellee Shoppers Food Warehouse at the close of all the evidence. The appeal presents but one issue: the propriety of the court's ruling on the motion. Because we determine that the court erred in granting it, we will reverse and remand to the circuit court for trial.

The genesis of this appeal was the filing by appellant of a claim with the Maryland Workers' Compensation Commission (Commission), alleging an accidental injury sustained in the course of employment. Following a hearing, the Commission determined that appellant did not sustain an accidental injury arising out of and in the course of her employment and, therefore, disallowed the claim. Aggrieved by that decision, appellant timely appealed to the circuit court, praying a jury trial of the issue.

At the trial, appellant testified as follows. She was employed by appellee as a merchandise stocker, which job required her to stock shelves for cat and dog products. On November 21, 1985, she was faced with a larger than usual quantity of Hartz Kitty Litter to be stocked and, in addition, the individual bundles were heavier and contained more bags than usual.[1] As she was required to do, she began to

---

1. It was customary for appellee to receive six to eight bundles at a time. Each bundle usually contained six bags, weighing ten pounds

stock the bundles on shelf one, which was approximately six inches off the floor, and shelf two, which was approximately one foot off the floor. After she had placed six of the bundles on those shelves, it became necessary to place the remaining bundles on the storage shelf, the fifth shelf.

To place the bundles on the fifth shelf, appellant obtained a one foot milk crate and placed it near the shelves. She then stood on the milk crate and lifted the 72 lb. bundle to the fifth shelf and pushed it on. It was while lifting the third such bundle that she injured her back.

Appellant stands 5'7" tall. She did not testify as to the height of the fifth shelf.

Its motion for judgment having been denied at the end of appellant's case, appellee presented testimony from its store manager and assistant manager. Both testified that the fifth shelf was approximately nine feet off the floor and that neither of them could reach it while standing on a one foot high milk crate and stretching toward that shelf. The assistant manager testified that he was 5'9" tall, while the store manager testified that he was 5'11" tall.

Appellant did not present a rebuttal case; hence, she did not specifically deny appellee's allegation as to the height of the fifth shelf. Appellee renewed its motion for judgment at the end of all the evidence. The court granted it, reasoning that it was physically impossible for a 5'7" woman to stock 72 lb. bundles on a shelf nine feet high while standing on a milk crate only one foot high.[2]

Maryland Rule 2–519 provides, in pertinent part:

(a) *Generally.*—A party may move for judgment on any or all of the issues in any action at the close of the

---

each. On the day in question, however, there were 15 bundles of Hartz Kitty Litter, each containing, six, 12 lb. bags.

**2.** While it is clear that appellee maintains that appellant did not suffer an accidental injury arising out of and in the course of employment, it candidly acknowledged, at oral argument that the issue decided by the motion for judgment was impossibility and, thus, that it is the only issue before us.

evidence offered by an opposing party, and in a jury trial at the close of the evidence. The moving party shall state with particularity all the reasons why the motion should be granted. No objection to the motion for judgment shall be necessary. A party does not waive the right to make a motion by introducing evidence during the presentation of an opposing party's case.

(b) *Disposition.*—When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. When a motion for judgment is made under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made.

In *James v. General Motors Corp.*, 74 Md.App. 479, 484–85, 538 A.2d 782 (1988), we considered the application of the rule. We said:

This Rule makes clear that when ruling on a motion for a judgment the trial judge must consider the evidence, including the inferences reasonably and logically drawn therefrom, in the light most favorable to the party against whom the motion is made.... If there is any evidence, no matter how slight, legally sufficient to generate a jury question, the motion must be denied.... On the other hand, where the evidence is not such as to generate a jury question, *i.e.*, permits but one conclusion, the question is one of law and the motion must be granted.... An appellate court reviewing the propriety of the grant or denial of a motion for judgment by a trial judge must conduct the same analysis. (Citations omitted)

*See also Pahanish v. Western Trails, Inc.*, 69 Md.App. 342, 353, 354, 517 A.2d 1122 (1986). The rule does not permit, except in a bench trial, the trial court to resolve disputed issues of fact.

Critical to the court's decision and, hence, to appellee's argument, is the notion that it was undisputed that the fifth shelf was nine feet high.  As the court put it:

It can't happen.  Now if the testimony was—if there was rebuttal testimony from your witness that had said that they are crazy, these things aren't nine feet tall; they are only about five feet tall, then we would have an issue.  We don't have that.  We have unrebutted testimony that [they] are nine feet tall.  Nobody bothered to take a measuring stick to see how tall they were, and nobody bothered to take a photograph of them to see how tall a man would be or a woman would be in connection with them, but we don't have the issue.

I mean, the testimony is at an end now.

  \*  \*  \*  \*  \*  \*

As I said, had the issue been created by her coming back and saying well, they are nuts, it can't be nine feet tall, it is not nine feet tall, that would be one thing, but it is unrebutted that it is nine feet tall, and that takes it right out of the realm of—the absolute realm ˊof possibility.

There is a flaw in the court's reasoning:  in order to reach that result, it was necessary for the trial court to resolve issues of credibility.

As we have seen, when appellant described how she sustained the injury that she alleges was an accidental injury arising out of her employment, she specifically did not testify as to the height of the fifth shelf.  She simply testified that by standing on a one foot high milk crate, she was able to place a 72 lb. bundle on that shelf.  At this point, no issue of impossibility had been, or indeed, could have been, raised.  It was only when appellee presented evidence as to the height of the fifth shelf, that it became even a potential issue in the case.

When appellee's witnesses testified as to the height of the shelf and the fact that, even though they are taller than appellant, they could not reach the fifth shelf while standing on the milk crate, thus, contradicting appellant's version

of how the accident occurred, they put in issue appellant's credibility and, necessarily, their own. Appellant's testimony, viewed in this context, could be interpreted in two ways: (1) assuming the impossibility of her doing so if the shelf were nine feet high, as indicating that the shelf was less than nine feet tall and (2) assuming the shelf was nine feet high, she nevertheless was able to place the bundles on that shelf. Both versions conflicted with appellee's version. It was the function of the jury to determine which of the three versions to accept.

Rather than submit the issue to the jury, the trial court determined that the testimony of appellee's witnesses was more credible on the issue. It did so by inferring from appellant's election not to present a rebuttal case as to the height of the shelf that the shelf must have been as high as appellee's witnesses said it was.[3]

While it is certainly proper and, indeed, it may be prudent under certain circumstances for a party to offer rebuttal evidence when the opposing party has raised a new matter during his or her case, we know of no rule of law which requires a party to do so. But that is precisely what the ruling of the court in this case did; the court placed on appellant, without even having explicitly informed her of that fact, the responsibility of affirmatively rebutting new matter introduced in the case by appellee. That requirement, necessarily, was the product of the court having determined the truth of that new matter.

Furthermore, when ruling on a motion for judgment, as we have seen, it is incumbent upon the court to view the evidence and the inferences reasonably deducible therefrom in the light most favorable to the party against whom the

---

3. By accepting as true the last evidence presented, the court applied a standard similar to that used in summary judgment cases. In summary judgment cases, however, Maryland Rule 2–501(e), specifies the effect of a failure to dispute material issues of fact. Here, we are dealing with an ongoing trial. The testimony presented by the parties, under oath, as to a material issue, to the extent it is conflicting, necessarily raises a genuine dispute on that issue.

motion is made. In this case, to meet that test, the court would have had to assume either that the shelf was not as high as the appellee's witnesses testified it was or that appellant did, indeed, place the bundles on that shelf notwithstanding its height.[4] *See Rafferty v. Weimer*, 36 Md. App. 98, 104, 373 A.2d 64 (1977). This is so even if the court views appellant's testimony as weak. *See Fowler v. Smith*, 240 Md. 240, 246, 213 A.2d 549 (1965) (a motion for judgment must be denied if a plaintiff produces "any evidence, however slight, *legally sufficient* as tending to prove" (Emphasis in original) his or her case, the weight and value of that evidence being left to the jury.) *James v. General Motors Corp.*, 74 Md.App. at 484, 538 A.2d 782; *Montgomery Ward and Company v. McFarland*, 21 Md. App. 501, 513, 319 A.2d 824 (1974). To be legally sufficient, the evidence must be more than "a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture". *Fowler v. Smith*, 240 Md. at 247, 213 A.2d 549. This is especially the case when the evidence is conflicting.

Appellee suggests that the court, relying only on the uncontradicted evidence presented by appellant, properly resolved the issue of impossibility in its favor. That simply is not the case. The stocking of the fifth shelf is impossible only if one believes that the shelf was nine feet high, an issue introduced into the case by appellee. Although appellant did not present rebuttal testimony, specifically to refute appellee's height evidence, when that evidence is juxtaposed against appellant's testimony, it is clear that it was a disputed issue. In resolving it in appellee's favor, the court committed reversible error, necessitating a new trial.

---

4. It is interesting to note that apparently the court focused upon whether a 5'7" woman standing on a one foot high milk crate could have reached the fifth shelf with her hands. From our reading of the transcript, it is clear that the court did not consider the length of the bundle being placed on the shelf. It is obvious that if the bundle were long enough, it would act as an extension of appellant's arms, making it perhaps possible for her to maneuver the bundle onto the fifth shelf notwithstanding her inability to reach the shelf with her hands.

JUDGMENT REVERSED AND CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR TRIAL.

COSTS TO BE PAID BY APPELLEE.